UNITED STATES, Appellee,

v.

**Patrick F. SPATA, Staff Sergeant, U.S. Air Force, Appellant.**

No. 65,725.

ACM S28240.

U.S. Court of Military Appeals.

Argued Jan. 8, 1992.

Decided June 17, 1992.

For Appellant: *Captain David D. Jividen* (argued); *Colonel Jeffrey R. Owens* (on brief).

For Appellee: *Captain Thomas E. Wand* (argued); *Lieutenant Colonel Brenda J. Hollis* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A special court-martial composed of officer members convicted appellant, contrary to his pleas, of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The court-martial sentenced appellant to a bad-conduct discharge, confinement for 3 months, and reduction to E–1. The convening authority approved the sentence, and the Court of Military Review affirmed the findings and sentence in an unpublished opinion dated July 24, 1990.

We granted review to consider the following issue:

WHETHER THE MILITARY JUDGE ERRED BY DENYING A DEFENSE MOTION IN LIMINE TO PRECLUDE THE PROSECUTION FROM CROSS–EXAMINING APPELLANT ABOUT UNCHARGED MISCONDUCT OCCURRING THE WEEKEND PRIOR TO HIS SUBMITTING A URINE SPECIMEN.

We hold that the military judge did not abuse his discretion.

On July 31, 1989, appellant provided a urine specimen during a surprise sweep of his unit. On August 17, 1989, appellant's unit received a laboratory report reflecting that appellant's urine sample contained in excess of 11,000 nanograms of benzoylecgonine, a metabolite of cocaine.

Four days later appellant provided the local Office of Special Investigations (OSI) a statement detailing his activities during the weekend preceding the surprise urinalysis. Included in that statement was an account of an altercation in a local bar on the Friday preceding the urinalysis. According to the statement, appellant brought

several miniature bottles of rum to the bar, and an unknown Hispanic woman stole one of the bottles. Appellant asked her to return it; she refused; they argued; appellant poured a mug of beer in her lap; and she poured the miniature bottle of rum on appellant. The bouncer then ejected the Hispanic woman from the bar. Appellant's statement to the OSI was not offered in evidence or disclosed to the court members.

Appellant first suggested the possibility that he had unknowingly ingested cocaine when, on August 25, he told a doctor in the local medical clinic that he believed someone might have "spiked" his drink with cocaine during the weekend before the urinalysis. Appellant's statement to the doctor was not offered in evidence or disclosed to the members.

The prosecution's case focused primarily on the laboratory report. A forensic chemist testified that the level of benzoylecgonine in appellant's urine indicated that the cocaine had been ingested "within 3 days" of the urinalysis.

After the Government rested, the defense moved *in limine* to prevent the prosecution from cross-examining appellant about his statement to the OSI. The military judge ruled that appellant's activities during the period preceding his urinalysis would be a permissible area of cross-examination, depending on the substance of appellant's testimony.

The defense opening statement did not suggest innocent ingestion but, rather, focused on the trustworthiness of the urinalysis system. The possibility of innocent ingestion was first suggested during cross-examination of the Government's toxicology expert, Dr. Jain. After establishing that at one time (around 1914) Coca-Cola contained cocaine and, more recently, "Health Inca Tea" was found to contain cocaine in amounts small enough to be virtually unnoticed by the user, trial defense counsel observed that the term "used" should be in quotation marks because, "One thing is clear, and I'm sure you'll agree with me: none of these tests can show anything about a person's intent or knowledge of

whether they used[.]" Dr. Jain agreed: "Absolutely right. The lab test also does not tell the intention of the person." After exploring other areas, the defense concluded its cross-examination of Dr. Jain by asking, "You can't say, to any degree of certainty, that you know whether or not Sergeant Spata intentionally ingested any cocaine, can you?" Dr. Jain responded, "No, nobody can tell."

Appellant testified and denied using cocaine on or about the date charged but did not suggest innocent ingestion. The prosecution cross-examined him at length about his activities during the weekend preceding the urinalysis. The prosecutor asked appellant if he had consumed any substance which might have contained cocaine and if he noticed any effect which he might have attributed to cocaine, and appellant responded that he had not.

The prosecutor then questioned appellant about the statement he had given the OSI describing the altercation with the unknown Hispanic woman. In response to leading questions, appellant ratified his statement to the OSI describing the altercation. During closing arguments on findings, defense counsel attacked the trustworthiness of the urinalysis and suggested the possibility of innocent ingestion. At defense request, the military judge instructed the members on innocent ingestion. The military judge offered to give a cautionary instruction on uncharged misconduct, but defense counsel affirmatively waived it.

■ Mil.R.Evid. 404(b), Manual for Courts–Martial, United States, 1984, specifically prohibits use of "[e]vidence of other crimes, wrongs or acts ... to prove the character of a person in order to show that the person acted in conformity therewith." This rule prohibits the prosecution from presenting uncharged acts of misconduct simply to show that the accused is a bad person and therefore more likely to have committed the offenses charged. *United States v. Brannan*, 18 MJ 181 (CMA 1984). Evidence of uncharged misconduct may be admitted to rebut an assertion of innocence

based on lack of criminal intent or other affirmative defense. *See United States v. Brooks*, 22 MJ 441, 444 (CMA 1986) (evidence of prior drug sales admitted to rebut claim that accused was innocent bystander during drug sale); *United States v. Brannan, supra* (evidence of prior drug offenses admitted to rebut claim that drugs were planted without accused's knowledge). *See* Mil.R.Evid. 608(c) Analysis (impeachment by contradiction), Manual, *supra* at A22–42 (Change 2). Admissibility of such evidence is subject to the requirement that "its probative value" outweigh "the danger of unfair prejudice." Mil. R.Evid. 403.

■ The test for compliance with that rule is whether the military judge abused his discretion in admitting the evidence of the barroom altercation. *United States v. Mukes*, 18 MJ 358 (CMA 1984). We hold that he did not. In this case the evidence of the barroom altercation had some probative value in that it negated the possibility, suggested by the defense, of innocent ingestion. Appellant could not have unknowingly ingested cocaine in a drink "spiked" by the unknown Hispanic woman if he poured the drink in her lap without consuming it. Although the evidence arguably showed uncharged misconduct, it was minor and minimally prejudicial, especially since the unknown Hispanic woman, not appellant, was ejected from the bar as the party at fault.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX and CRAWFORD concur.

WISS, Judge (concurring in the result):

I believe the critical issue here is the proper scope of cross-examination and of rebuttal. Because I believe that trial counsel's cross-examination of appellant exceeded that scope, I cannot agree that it was proper. I do agree, however, that the error was not prejudicial, so I concur in the result reached by the majority.

As the majority acknowledges, the only evidence arguably relating to unknowing ingestion during the prosecution's case arose incident to the defense cross-examination of Dr. Jain. As the summary of that questioning in the majority opinion, 34 MJ at 284–85, capably demonstrates, however, the suggestion there was only a conceptual or theoretical one that possibly, through some means that we are completely unaware of today, cocaine might have been introduced into appellant's body—thus, his references to the old Coca–Cola recipe and to "Health Inca Tea." There was no suggestion at all that cocaine might have been *surreptitiously* delivered to appellant through tampered drink or food.

Moreover, again as the majority forthrightly recognizes, *id.* at 285, appellant "did not suggest innocent ingestion" at any time during his direct testimony—and, in fact, he did not suggest unknowing ingestion through tampered food or drink in any other way during the defense case.

It was under these circumstances that the military judge, over defense objection, permitted trial counsel to cross-examine appellant concerning the absence of opportunities for him to have ingested a "mickey" during the time period preceding his urinalysis. However, under these circumstances, it is clear to me that such questioning was *outside* the proper scope of cross-examination. *See* Mil.R.Evid. 611(b), Manual for Courts–Martial, United States, 1984. It "rebutted" *nothing* that had been testified to by appellant or offered in the defense case. Moreover, it did not rebut the "theoretical" concept of unknowing ingestion which arose in the cross-examination of Dr. Jain in the prosecution case.

If this questioning had revealed acts more detrimental to appellant's general character, I would have some difficulty concluding that this error was not prejudicial. I concur with the majority, though, that the facts of this case amply demonstrate that evidence of such relatively inconsequential misconduct did not harm appellant's defense.