UNITED STATES, Appellee

v.

Rickey D. WELKER, Machinist's Mate
First Class, U.S. Navy, Appellant.

No. 94–0088.
CMR No. 92 0743.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 5, 1995.

Decided May 29, 1996.

For Appellant: Major *David S. Jonas*,
USMC (argued); *Major Steven P. Ham-*

*mond,* USMC (on brief); *Lieutenant Michael C. Pallesen,* JAGC, USNR.

For Appellee: *Lieutenant John R. Livingston, Jr.,* JAGC, USN (argued); *Commander S.A. Stallings,* JAGC, USN (on brief) *Colonel T.G. Hess,* USMC, *Major Laura L. Scudder,* USMC, and *Lieutenant Commander David B. Auclair,* JAGC, USN.

*Opinion of the Court*

CRAWFORD, Judge:

Pursuant to his pleas, appellant was convicted at Great Lakes, Illinois, of attempted carnal knowledge, carnal knowledge, and sodomy of C, his 13-year old stepdaughter, as well as committing indecent acts with her (4 specifications), in violation of Articles 80, 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 920, 925, and 934, respectively. Appellant was sentenced by the court members to a dishonorable discharge, 26 years' confinement, total forfeitures, and reduction to the lowest enlisted grade. Pursuant to the pretrial agreement, the convening authority approved the adjudged sentence, but suspended execution of confinement in excess of 12 years. The Court of Military Review [1] affirmed the findings and sentence. 37 MJ 1066 (1993). We granted review of the following issue: [2]

> WHETHER THE COURT OF MILITARY REVIEW ERRED BY FAILING TO ADDRESS THE ISSUE OF THE CROSS–EXAMINATION OF THE VICTIM IN THIS CASE WHEN THAT CROSS–EXAMINATION WAS ASSERTED AS ERROR IN APPELLANT'S RCM 1105 SUBMISSION TO THE CONVENING AUTHORITY.

Appellant urges us to remand the record of trial to the court below for that court either to address the issue of the cross-examination of the victim or to remand to the convening authority for a suitable staff judge advocate (SJA) recommendation. The Government, on the other hand, acknowledges the failures of the court below and of the SJA

to address this issue. Nevertheless, using, at oral argument, the analogy of a set of stacking dolls, the Government urges us, in the interests of judicial economy, to look at the inner-most doll, *i.e.,* the cross-examination of the victim, to determine if there was error in the first instance.

We are persuaded by the Government's argument and hold that, since the victim's cross-examination at trial was proper, it was harmless error for the Court of Military Review not to address the issue.

FACTS

After appellant's guilty pleas were accepted as provident, the victim, C, was called in the sentencing portion of the trial as a witness in aggravation for the prosecution. Even while giving her name and family background, she was hesitant about testifying. When the prosecutor asked about the first incident of sexual abuse, C stated that it was "hard to talk about now." She started crying and refused to give any details as to what had happened. The judge granted a recess and excused the members. Later on, he held an Article 39(a), UCMJ, 10 USC § 839(a), session.

The judge made the following findings of fact as to C's testimony:

> I want to note for the record, first of all, and I don't think it was clear on the record, initially that, when [C] was, in fact, called to testify, it is the court's judgment that she was unable to do so because of the stress of the situation. Her demeanor while on the witness chair was—she was crying. Her hands were balled into tight fists; when they were not in tight fists, they were wrapping her shirt cuffs tightly around her wrists and, otherwise, showing intense discomfort. She was unable to speak in a voice that was readily audible to the court, and that she was clearly distraught at the prospect of being here and testifying.

---

1. *See* 41 MJ 213, 229 n. * (1994).

2. Issue II has been decided adversely to appellant in *United States v. Mitchell,* 39 MJ 131 (CMA), *cert. denied,* — U.S. —, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994).

During that Article 39(a) session, the prosecutor had said, when asked about "the status of things," that while counsel were working on a stipulation during the recess, C "came to Mr. Lazzaro [civilian defense counsel], asked to talk to him, and has initially recanted her statement." After a noon recess, the parties could not reach an agreement as to a stipulation. As a result, the prosecution agreed not to call the victim.

The defense had acknowledged that the pretrial agreement in this case "constituted a substantial benefit to" appellant because of the serious nature of the charges. The defense persisted in not withdrawing the pleas even though the victim was going to recant her testimony. The judge reminded counsel there could not be a plea, unless appellant thought he was in fact guilty. Both defense counsel and appellant assured the judge that the pleas were provident and that the accused did "not wish to withdraw" his pleas.

Later the victim was called as a defense witness, and she testified as follows:

Q. After that incident happened, did you say anything to your father?

A. I told my father that it was wrong and that he shouldn't do this anymore.

Q. What did your father say to you when you told him that?

A. He told me that he knew it was wrong and that, if it ever happened again, he—I should call the police.

Q. Had you ever told your father that this was wrong or you didn't want him to do anything with you before that?

A. No, I did not.

Q. And, after you told him that, did anything ever happen again between you and your father?

A. No.

Q. What do you want to happen to your father at this time?

A. I would like my father not to go to jail and that for him to stay with us. And he does need to get help, and I think that we should all go into family therapy.

Q. O.K. When you say "all of us," do you mean your father, and you, and your mother, and the entire family?

A. Yes, I do.

After questions from the defense, the prosecution began to question C in graphic detail about earlier incidents of abuse where she had told her stepfather "no" but to no avail. Trial counsel also asked C whether her mother had threatened her that if C testified and her stepfather went to jail, they would have no income, would be socially outcast, and C would have to have her dogs put to sleep if they had to move out of the house. Defense counsel repeatedly objected to this line of questioning on the basis that it went outside the scope of direct examination and also improperly brought in uncharged misconduct. At another Article 39(a) session, the military judge overruled these defense objections by noting that trial counsel was allowed to ask questions on cross-examination that would show "the basis of" C's testimony. For example, trial counsel was allowed to show why C held the opinion that her stepfather should come home and receive treatment rather than go to jail. The judge also said that he believed the questions not only went to the basis of C's opinions, but also "reflect[ed] on her credibility." Nevertheless, to clarify the purpose of the cross-examination, the judge sua sponte gave limiting instructions that the court members could only consider C's testimony for the purposes of "test[ing] the basis of" her position "that she would like" to have the family reunited and as to "her credibility" on those issues.

After sentencing, in response to the SJA's recommendation, defense counsel alleged the following legal errors in his post-trial (RCM 1105, Manual for Courts–Martial, United States (1994 ed.)) submission:

a. Trial counsel in cross-examination of the complaining witness far exceeded the *scope* of direct examination and not only brought into evidence matters that were not covered in direct examination but also matters which consisted of evidence of uncharged misconduct.

b. Trial counsel continuously berated and harassed the accused during his cross-examination which not only deprived these proceedings of the dignity and decorum which they merited, but also tended to appeal to the prejudices and emotions of

the members and to otherwise incite and inflame them.

c. Trial counsel improperly elicited extensive evidence of uncharged misconduct during his cross-examination of the accused.

(Emphasis added.)

On appeal appellant alleged, *inter alia*, that the SJA committed error by failing to comment on these legal errors. The Court of Military Review noted that "[f]our such errors were asserted. Three pertain to the trial counsel's cross-examination of the appellant...." 37 MJ at 1069. Apparently the court below was under the mistaken belief that the alleged legal errors all pertained to the cross-examination of the accused and simply overlooked any claim of error with respect to the complaining witness, C.

## DISCUSSION

Article 60(d), UCMJ, 10 USC § 860(d)(1983), provides that, before taking action on a case, the convening authority will refer a record of trial to the SJA. It continues: "The recommendation of the staff judge advocate ... shall include such matters as the President may prescribe by regulation and shall be served on the accused, who may submit any matter in response...."

RCM 1106(d), Manual, *supra* (1994 ed.), provides in part:

(2) *Form.* The recommendation of the staff judge advocate or legal officer shall be a concise written communication.

(3) *Required contents.* Except as provided in subsection (e) of this rule, the recommendation of the staff judge advocate or legal officer shall include concise information as to:

(A) The findings and sentence adjudged by the court-martial;

(B) A summary of the accused's service record, to include length and character of service, awards and decorations received, and any records of nonjudicial punishment and previous convictions;

(C) A statement of the nature and duration of any pretrial restraint;

(D) If there is a pretrial agreement, a statement of any action the convening authority is obligated to take under the agreement or a statement of the reasons why the convening authority is not obligated to take specific action under the agreement; and

(E) A specific recommendation as to the action to be taken by the convening authority on the sentence.

As RCM 1106(d)(4) recognizes:

The response [to an allegation of legal error] may consist of a statement of agreement or disagreement with the matter raised by the accused. An analysis or rationale for the staff judge advocate's statement, if any, concerning legal errors is not required.

In *United States v. Hill*, 27 MJ 293, 296–97 (1988), we reminded counsel and the SJA that "in most instances, failure of the staff judge advocate ... to prepare" an appropriate SJA recommendation and response to "any legal error intimated by" the defense "will be prejudicial and will require remand of the record to the convening authority for preparation of a suitable recommendation." This is because "an accused is entitled to be placed in the position he would have occupied if an error had not occurred." *Id.* at 296. *See also United States v. Craig*, 28 MJ 321 (CMA 1989). We adhere to that position.

RCM 1106(d)(4) does not require a detailed response by the SJA to an allegation of legal error. However, the convening authority is not a lawyer; thus he or she needs the advice of a legal officer or an SJA. Unless there is some indication whether the defense assertion of error is correct, the convening authority cannot make an intelligent decision. Even though there was a failure by the SJA in this case to advise the convening authority as to any agreement or disagreement with the matters raised by appellant, we will examine the underlying matters, as we did in *Hill*, and we will determine whether the silence of the SJA or the failure of the court below to address the issue resulted in a violation of appellant's substantial rights. Art. 59(a), UCMJ, 10 USC § 859(a).

■ If there is no error in the first instance at trial, we will not find prejudicial error in the failure of the SJA to respond or in the failure of the court below to address the issue. *See United States v. Pena,* 22 MJ 281 (CMA 1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987).

In the final analysis the question here is whether there was improper cross-examination by the prosecutor. As to the methods of impeachment, this Court stated in *United States v. Toro,* 37 MJ 313, 315 (CMA 1993), *cert. denied,* 510 U.S. 1091, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994), that a witness may be impeached by the following methods:

> Impeachment occurs after a witness testifies. The methods of impeachment include: character trait for untruthfulness—Mil.R.Evid. 608(a), Manual for Courts-Martial, United States, 1984; prior convictions—Mil.R.Evid. 609(a); instances of misconduct not resulting in a conviction—Mil.R.Evid. 608(b); prior inconsistent statements—Mil.R.Evid. 613; prior inconsistent acts—*cf. Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *bias—United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), and Mil.R.Evid. 608(c); and *specific contradiction.*

(Emphasis added.) *See also United States v. Robertson,* 39 MJ 211, 214 (CMA 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 721, 130 L.Ed.2d 626 (1995).

■ When called as a defense witness on direct examination, C testified that she did not want her father "to go to jail," but rather "to stay" with the family. It was appropriate cross-examination to impeach her by showing that she had been threatened by her mother. Mil.R.Evid. 608(c). It was also appropriate for the prosecution to cross-examine C to establish that it was unrealistic, due to the nature of the offenses, for her father to return home. *United States v. Loving,* 41 MJ 213, 251 (1994), *cert. granted on other grounds,* —— U.S. ——, 116 S.Ct. 39, 132 L.Ed.2d 920 (1995); *United States v. Spata,* 34 MJ 284, 286 (CMA 1992); *United States v. Tarantino,* 846 F.2d 1384, 1409 (D.C.Cir. 1988)("The 'specific contradiction' rule . . . is a particular instance of the trial court's general power under Fed.R.Evid. 403 . . . ."); 15 Federal Rules of Evidence News 59 (April 1990)(referring to "the federal common law of 'specific contradiction' ").

The theory of "specific contradiction" is a method separate from impeachment by instances of misconduct under Mil.R.Evid. 608(b). It is a common-law theory recognized by this Court and many commentators. *See, e.g., United States v. Spata,* 34 MJ at 286; *United States v. Williams,* 23 MJ 362, 368 (CMA 1987); *United States v. Banker,* 15 MJ 207, 210 (CMA 1983)(and authorities cited therein).

■ We hold that the challenged questions on cross-examination were within the scope of the direct examination. Mil.R.Evid. 611(b). The prosecution only asked about three incidents out of many to establish that the witness' father should not immediately return home. These incidents revealed that appellant had orally sodomized her when he was told to leave her alone and that he would have sexual relations with her as soon as her mother left the house.

The other offenses involving appellant were set forth in detail for the court members by presenting them with a copy of the providence inquiry. Prosecution Exhibit 2. As appellant recognized, when the victim started to recant her testimony, the last thing he wanted to lose was the pretrial agreement that limited confinement to 12 years.

■ Because we conclude that there was no error at trial, the SJA's response would have been a disagreement with appellant's issue, and, even if the court below had not been mistaken as to the issues, no relief would have been granted. Thus, failure to respond to the allegation of legal error had no impact on the substantial rights of appellant. Art. 59(a).

Since we hold that there was no deficiency at trial, we also hold that there was no prejudicial error from the failure to discuss the issue.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge COX and Judge GIERKE concur.

SULLIVAN, Judge (dissenting):

The Court of Military Review (now the Court of Criminal Appeals) has unique appellate powers especially in the area of sentencing. *See Ryder v. United States,* ——— U.S. ———, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995). Where it overlooks an assigned error, a remand for reconsideration is appropriate. *See United States v. Johnson,* 42 MJ 443, 446 (1995) (Remands are "reflections of our respect and recognition of the high quality and expertise of the now Courts of Criminal Appeals."). In this regard, I further note that I agree with Senior Judge Everett that the overlooked assignment of error is not clearly without legal merit. *See United States v. Hill,* 27 MJ 293, 296–97 (CMA 1988).

The cases cited by the majority do not directly support the conclusion that the prosecutor's cross-examination of the victim concerning uncharged misconduct was appropriate. The "specific contradiction" rule noted by the majority is not applicable. It states only that "a witness may not be impeached by extrinsic evidence (contradiction by another witness or evidence) on a collateral issue." *United States v. Tarantino,* 846 F.2d 1384, 1409 (D.C.Cir.1988). It simply does not justify the challenged cross-examination as within the scope of direct examination. *See* Mil.R.Evid. 611(b), Manual for Courts-Martial, United States (1994 ed.).

The cross-examination of the victim as to other acts of sexual misconduct by appellant may or may not impeach or undermine her testimony that she wanted appellant to stay at home and not go to jail. *See generally United States v. Banker,* 15 MJ 207, 210 (CMA 1983). In any event, I think the majority should explain, not simply assert, how a victim's personal view of punishment is somehow rebutted by showing additional acts of misconduct by appellant. Finally, I do not understand the relevance of appellant's desire to preserve his pretrial agreement to this question. In this posture, I would remand this case to the Court of Criminal Appeals for its action.

EVERETT, Senior Judge (dissenting):

In his submission to the convening authority under RCM 1105, Manual for Courts-Martial, United States (1994 ed.), Welker's defense counsel asserted that trial counsel had committed legal error by improperly introducing "evidence of [Welker's] uncharged misconduct" during trial counsel's cross-examination of the victim, Welker's stepdaughter. The staff judge advocate (SJA) had to respond to this allegation in his recommendation to the convening authority under RCM 1106(d), *see United States v. Hill,* 27 MJ 293, 296 (CMA 1988), but he never acknowledged in any way this assertion of legal error.

Then, during appellate review in the Court of Military Review (now Court of Criminal Appeals), Welker asserted through appellate defense counsel that the SJA had erred by not responding to his RCM 1105 assertion. The Court of Military Review, however, apparently misread the appellate assignment of error (which included two claims regarding cross-examination of appellant and one concerning cross-examination of the alleged victim (CMR Brief at 7)) by grouping all three claims as concerning cross-examination of the accused himself—and finding these claims meritless. 37 MJ at 1069.

Thus, in this Court, Welker's contention is heard for the first time. Rather than returning the record for consideration of this claim by the SJA and convening authority and then by the Court of Criminal Appeals, however, the majority cuts to the chase to see whether trial counsel's alleged misstep "resulted in a violation of appellant's substantial rights," citing *Hill.* 44 MJ at 88. Concluding, to the contrary, that the prosecutor's cross-examination was proper, the majority affirms the decision below.

I do not agree that *Hill* supports the majority's articulation of the appropriate response of an appellate court when faced with oversight by an SJA like the one in this case.

Instead, applying the standard that I read *Hill* to set out, I believe that appellant is entitled to have his claim of improper cross-examination considered by all reviewing authorities below.

### Appropriateness of Remand under Hill

After holding in *Hill* that RCM 1106(d) requires an SJA to respond to an accused's RCM 1105 assertion of legal error at trial, the Court turned to the question upon which the instant appeal turns: "If the staff judge advocate fails in his duty to respond to allegations of legal error, must an appellate court return the case to the convening authority or may the appellate court itself determine whether the accused has been prejudiced?" 27 MJ at 296.

After noting the logic behind each option, the Court "conclude[d] that, in most instances, ... [such an omission by the SJA] will be prejudicial and will require remand of the record to the convening authority for preparation of a suitable recommendation." On the other hand, if an appellate court finds that a post-trial assertion of error "clearly has no merit," an accused is not entitled to a remand just so he can seek what would amount to an undeserved windfall. 27 MJ at 296.

That does not mean, however, that a remand is appropriate only in the converse situation—that is, only when an appellate court finds that the post-trial assertion of error *clearly has merit.* If that were so, it would be a classic waste of resources for an appellate court to remand the case for consideration of that clearly meritorious error, rather than simply to redress the wrong, right then and there.

Accordingly, I read the opinion in *Hill* most logically to say this: If an appellate court concludes that an accused's post-trial assertion of error *clearly is without merit,* the accused is not entitled to the hollow gesture of a remand so that the convening authority can consider a baseless claim. Implicitly, at the other extreme, if a post-trial assertion *clearly is correct,* common sense and efficient use of resources would seem to dictate that an appellate court remedy the

injustice perpetrated by the trial error. "[I]n most instances" of post-trial claims of error, however, *see* 27 MJ at 296, the *merit or lack of merit is not so clear-cut,* and an accused is entitled to make his case to the convening authority. I read *Hill* to have said as much when I wrote for the Court:

> Thus, a Court of Military Review is free to affirm when a defense allegation of legal error would not foreseeably have led to a favorable recommendation by the staff judge advocate or to corrective action by the convening authority. Otherwise, failure by the staff judge advocate to respond to an allegation of legal error, which has been submitted in a timely ma[nn]er whether before or after the recommendation of the staff judge advocate has been served on the defense, requires remand to the convening authority for comment by the staff judge advocate. In this way, we honor the broad discretion conferred on the convening authority by Congress and at the same time assure that the accused receives the benefit of the informed exercise of that discretion intended by the Manual for Courts–Martial.

27 MJ at 297.

### Appellant's Assertion of Trial Error

At this point, then, I believe that the analysis must turn to whether Welker's assertion of trial error clearly is without merit; only if it is may this Court affirm the decision below without returning this case for a new SJA recommendation and convening authority action.

As the majority opinion points out, Welker pleaded guilty to several specifications that alleged a variety of serious sexual offenses involving his minor stepdaughter; one of these asserted that appellant had committed the crime of carnal knowledge with the victim "on several occasions" "between October 1987 and July 1989." He pleaded not guilty, however, to several other charges of sexual misconduct involving the same girl; one of these specifications, which was dropped by the prosecution, had alleged that Welker had directed and watched sexual intercourse between this same girl and her brother.

As the majority opinion indicates, the victim testified on direct examination by defense counsel during the presentencing stage of this trial that she did not want appellant to go to jail but, instead, wanted him to stay with the family. 44 MJ at 87. I have no quarrel with the majority that, in turn, the prosecution was entitled to test her mettle in this regard in the context of the offenses of which appellant was convicted. Although the majority opinion implies that that was the extent of the prosecutor's impeachment effort, regrettably that most clearly is not the case.

For instance, at one point trial counsel asked the young girl whether she wanted appellant to return home "even though he had sexual relations with you almost every time your mother went to work while you were living in Hawaii." Despite defense objection, the witness was directed to answer. A conviction of having carnal knowledge of this girl "on several occasions" over a period of over 1½ years is not tantamount to sex "almost every time" her mother went to work, and no evidence of record supports this blatant embellishment.

Then, almost immediately thereafter, trial counsel was permitted to ask the victim—again, over defense objection—the following question:

[C], given that your father had you and your younger brother, [M], perform sexual acts on each other while he watched, you still want him to come home and not go to jail?

Again, no evidence was before the factfinders on this alleged misconduct—misconduct that was charged in a specification that was affirmatively dropped by the prosecutor—misconduct that might well be viewed as even more disturbing than what appellant had pleaded guilty to—misconduct that, as well, might be expected to trigger an escalation of the sentence.

For his part, the military judge did instruct the members about this "uncharged misconduct" being dug out by the prosecutor—"I point specifically to · this business about sexual relations 'every time your mother went to work,' that sort of thing." He admonished the members that such evidence could be used by them "for a very limited purpose, and only for this purpose, and that is to test the basis of this particular witness' opinion that she would like her father to return home and her credibility generally." Unfortunately, it may well be that such an instruction is akin to one to ignore the pink elephant that just walked across the courtroom.

Is this claim of prejudicial error clearly correct, so as to warrant our immediate remedial action? I am unsure, given the seriousness of the admitted sexual transgressions and the arguably mitigating effect of the instruction. Is it *clearly without* merit, however? Not in my view.

In this context, then, and given my reading of the standard set out in *Hill*, I would remand this case for appropriate consideration by the convening authority after treatment in the SJA's recommendation. That is what the Uniform Code of Military Justice provides appellant, and that is what I would assure him.