# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.Y. MARKS**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**JAMES P. BRANEN**
**HULL MAINTENANCE TECHNICIAN FIRST CLASS (E-6), U.S. NAVY**

**NMCCA 201400412**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 25 July 2014.
**Military Judge:** LtCol C.J. Thielemann, USMC.
**Convening Authority:** Commander, Navy Region Northwest, Silverdale, WA.
**Staff Judge Advocate's Recommendation:** LCDR E.K. Westbrook II, JAGC, USN.
**For Appellant:** LT Douglas Ottenwess, JAGC, USN; LT Jessica L. Ford, JAGC, USN.
**For Appellee:** LT Ann E. Dingle, JAGC, USN.

**27 October 2015**

---------------------------------------------------
**OPINION OF THE COURT**

THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.

HOLIFIELD, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of two specifications of sexual abuse of a child in violation of Article 120b, Uniform Code of Military Justice, 10 U.S.C. § 920b. The members sentenced him to four years' confinement, total forfeiture of pay and allowances, reduction

to pay grade E-1, and a dishonorable discharge.  The convening authority (CA) approved the sentence as adjudged.

The appellant raises four assignments of error (AOEs):

(1)  the military judge improperly denied a challenge for cause against a member whose close family member was the victim of sexual abuse as a child;

(2)  the trial counsel voiced a personal opinion on witness credibility, disparaged the trial defense counsel, discussed facts not in evidence, and commented on the appellant's exercise of his constitutional rights;

(3)  the staff judge advocate (SJA) failed to comment on claims of legal error the appellant raised in his clemency request; and,

(4)  the evidence is legally and factually insufficient to prove the appellant had the required specific intent.[1]

After carefully considering the record of trial and the parties' submissions, we are convinced the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

### Background

On 28 September 2013, the appellant attended a party at his neighbor's house.  Among the neighbor's daughters were C.A., age 15, and V.A., age 10.  Also present was J.D., a 12-year-old friend of V.A.  At the party the appellant drank alcohol to the point that he was slurring his speech, stumbling, and running into walls.  J.D. testified that at one point during the party the appellant was staring at her, and shortly thereafter told her, "Me and you will hang out – just me and you hang out in 15 minutes."[2]

Later, around midnight, J.D. awoke to see the appellant standing at the foot of the bed where she and V.A. were

---

[1] This assignment of error is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] Record at 417.

2

sleeping.  After approximately five minutes, the appellant left and she fell back to sleep.  J.D. awoke again to find the appellant in her room, this time close to the bedside.  Saying "scoot over, I want to lay in bed with you,"[3] the appellant placed his hand on her upper thigh and buttocks.  J.D. resisted his efforts, and the appellant left.  In response to C.A. seeing him leave the girls' bedroom, the appellant said he was looking for the bathroom.  J.D. and V.A. immediately went downstairs and reported the incident to V.A.'s mother, who then walked J.D. home.  The appellant followed them to J.D's house, and asked if everything was alright.  According to V.A.'s mother, the appellant looked "worried."[4]

C.A. subsequently reported that, a few weeks prior to 28 September, the appellant had touched her as well.  C.A. was at her home watching a movie with her siblings and their friends when the appellant arrived with a bottle of alcohol and began watching the movie with them.  The appellant initially sat on a different couch than C.A., but, after the other children left to play elsewhere, the appellant moved to sit beside C.A.  The appellant then used his feet to play with hers, moving closer to her on the couch.  He then placed his hand on C.A.'s thigh as she attempted to move as far as she could away from him.  At that point, C.A.'s brother re-entered the room, and C.A. told appellant to leave because the children were going to bed.  The appellant left the home at that time, but was later found asleep on one of the couches.

Additional facts necessary to address the AOEs will be provided below.

**Discussion**

**I.  Challenge for Cause**

During individual *voir dire*, a potential member, LT L, revealed that he had a close family member who was the victim of child sexual abuse before LT L was born.  The family member is not "very much affected" by the abuse, which was first described, without details, to LT L five or six years ago.[5]  When asked how this experience might affect his performance as a

---

[3] *Id*. at 402.

[4] *Id*. at 323.

[5] *Id*. at 187, 183.

3

court-martial member, LT L said the experience would "make [him] ask questions," but he did not think it would "get [his] feelings involved and ruin[] [his] objectivity."[6] In response to the military judge asking whether LT L's association with that family member would impact his ability "to sit as a fair and impartial member of this case," LT L said, "I will maintain my objectivity, sir."[7] He further stated, "I have to put it aside because this is someone's life, and if I would put myself in their shoes, I would want someone to disassociate, put their feelings aside and be able to look at just the facts, and use the facts to come to a decision."[8]

The defense challenged LT L on the basis of implied bias. The military judge denied the challenge, finding neither actual nor implied bias, even when considering the liberal-grant mandate.

We review a military judge's ruling on a challenge for cause based on implied bias "under a standard less deferential than abuse of discretion, but more deferential than de novo." *United States v. Woods*, 74 M.J. 238, 243 (C.A.A.F. 2015) (quoting *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002)). The test for implied bias is one of public perception that requires us "to look[] to an objective standard in determining whether implied bias exists. . . . In reaching a determination of whether there is implied bias, namely, a 'perception or appearance of fairness of the military justice system,' the totality of the circumstances should be considered." Id. (quoting *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015)).

We conclude there is no risk that the public would perceive that the appellant received anything less than a fair trial. First, there is no evidence LT L's close relation with a victim of child sexual abuse played any part in his being detailed to the court-martial. The CA was almost certainly unaware of the relationship, as there was no mention of it on LT L's questionnaire. Second, LT L's responses during *voir dire* make clear to any reasonable observer that LT L would not allow this experience to affect his impartiality or objectivity in deciding the case. And, third, the facts as described by LT——that the abuse occurred before he was born, that he learned of the abuse

---

[6] *Id*. at 187.

[7] *Id*. at 189.

[8] *Id*. at 190.

4

over five years ago, and that the abuse does not affect his family member very much——could not raise a reasonable doubt concerning the fairness of our justice system.  Thus, we find the military judge did not abuse his discretion in denying the challenge.

**II. Improper Argument**

The appellant alleges a number of trial counsel's improper comments during closing argument resulted in material prejudice to his substantial rights.  We disagree.

*Background*

The alleged improprieties are summarized as follows:

1.  Stating personal opinion and vouching:

    a. C.A. was a "very brave girl" who gave "powerful testimony."[9]

    b. C.A. was "not somebody that's making up this allegation.  She's a very credible young girl."[10]

    c. "C.A. has been extremely consistent about this allegation, and her consistency is evident throughout the testimony you heard . . . ."[11]

    d. Certain facts are "undisputed."[12]

2.  Disparaging defense counsel:

    a. "The defense just shot a lot of countermeasures, but the chaff can only get you so far.  You've had some time for the noisemakers to quiet down.  Let's talk about the facts that are actually in evidence."[13]

---

[9] *Id*. at 532.

[10] *Id*.

[11] *Id*. at 533.

[12] *Id*. at 528, 529, 534 (defense objected at 538).

[13] *Id*. at 572 (defense objected).

b. "And frankly, the courtroom is not theater of the absurd, it's about facts and rational arguments."[14]

3. Referring to facts not in evidence:

a. On J.D.'s testimony:  "He touched her thigh, her—I think she even said her upper inner thigh a couple of times, and then he touched her buttocks."[15]

b. "The memory . . . it's not going to give you a perfect playback, but what it can do is give you a gist.  That's what the headshrinkers call it:  gist memory, the core, the important stuff."[16]

4. Commenting on the appellant exercising his right to confront witnesses and to defend against the charges:

a. "And the real tragic thing about bringing a child-abuse case like--sexual abuse case like this to trial is that the children have to come in here and they have to tell you what happened. They have to sit here in this chair and re-live those experiences.  That's the real tragic thing about this case."[17]

b. "And in the rest of the trial, after they're—they sit up here and they tell you in their words what happened, when C.A. gets up here in tears and tells you how horrible she feels, the defense spends the rest of their trial trying to discredit them, spent the rest of trial trying to show the accused didn't mean to do what he did or it wasn't that big of a deal."[18]

---

[14] *Id.*

[15] *Id.* at 527-28.  J.D. did not testify that the appellant touched her "inner" thigh.

[16] *Id.* at 576-77.

[17] *Id.* at 526-27.

[18] *Id.* at 527.

The trial defense counsel objected to the use of the term "undisputed." The military judge provided a curative instruction: "Members . . . I will just remind you that the burden of proof in this case is on the government, and that the defense is not required to produce any evidence, and that government is required to prove every element beyond a reasonable doubt for the offenses charged."[19] The defense also objected to the statement regarding "countermeasures" and "chaff." The military judge did not rule on the objection, but instructed trial counsel to "focus on the facts."[20] None of the other comments drew an objection at trial.

*Law*

Improper argument is a question of law reviewed *de novo*. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011). When proper objection is made at the trial level, we will review those comments for prejudicial error. *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citing Art. 59, UCMJ). When there is no objection, we review for plain error. *Id.* "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Id.* (citation omitted). Thus, regardless of whether an objection was made at trial, any such error must be reviewed for prejudice.

"In assessing prejudice, we look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial." *Id.* at 184 (citation omitted). That is, whether the comments, taken as a whole, were "so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." *Id.*

In *Fletcher*, the Court of Criminal Appeals for the Armed Forces enumerated the factors relevant to an assessment of prejudice: (1) the severity of the misconduct, (2) any curative measures taken, and (3) the strength of the Government's case. "Indicators of severity include (1) the raw numbers—the instances of misconduct as compared to the overall length of the argument, (2) whether the misconduct was confined to the trial counsel's rebuttal or spread throughout the findings argument or the case as a whole; (3) the length of the trial; (4) the length

---

[19] *Id.* at 542.

[20] *Id.* at 572.

7

of the panel's deliberations, and (5) whether the trial counsel abided by any rulings from the military judge." *Id*. (citation omitted).

*Analysis*

We are not compelled to address every comment of trial counsel here, as we find, at a minimum, that the trial counsel's comments on the appellant exercising his right to confront witnesses and to defend against the charges were plain error. *See United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983)("it was unconscionable for trial counsel repeatedly to emphasize appellant's assertion of his rights.")  Based on this error—and assuming *arguendo* that the other comments were likewise error— we now review for prejudice.

a. **Severity of misconduct.**  The severity was low.  The trial counsel's statements cited by the appellant are isolated comments within a summation totaling over 17 pages.  None of these statements reflect themes woven throughout the argument or the Government's case-in-chief in any meaningful way.  The members deliberated for approximately 90 minutes on a single charge with two specifications, reviewing relatively limited evidence, where the only issue substantially contested was the appellant's intent.[21]  In response to defense objections, the military judge reminded the members of the Government's burden and directed trial counsel away from shoal water.  The trial counsel followed this direction.

b. **Curative Measures taken.**  Besides the curative instruction mentioned, the military judge instructed the members that the arguments of counsel are not evidence, that they must base their decision on the evidence as they remember it, and to disregard any comments of counsel that conflict with the judge's instructions.  He also instructed the members of their exclusive duty to determine witness credibility.

c. **Strength of the Government's case.**  The Government's case, although primarily based upon the testimony of two children, was reasonably strong when taken as a whole.  Given all this, we are confident in the members' ability to adhere to the military judge's instructions and to put counsel's arguments

---

[21] The total evidence before the members consisted of the testimony of five percipient witnesses, one character witness, and four photographs of V.A.'s bedroom.

in their proper context.  We are equally confident that the members convicted the appellant on the basis of the evidence alone.

### III.   Staff Judge Advocate's Recommendation

The appellant next alleges that the SJA's failure to comment on allegations of legal error raised in the appellant's RULE FOR COURTS-MARTIAL 1105, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), clemency submission requires we remand this case for new post-trial processing.  We disagree.

The SJA's recommendation in this case is dated 16 October 2014.  The appellant, through counsel, submitted clemency matters on 14 November 2014.  In his clemency request, the appellant argued that the evidence at trial was insufficient to support his conviction under Article 120b.[22]  Specifically, the appellant argued there was no evidence of an intent to gratify his sexual desires, but if there was any such evidence, his level of intoxication on both occasions raised serious doubt regarding his ability to form this intent.  The SJA did not prepare an addendum to his recommendation in response to the clemency request or otherwise comment on this allegation of legal error.  In his action, the CA stated that he had reviewed, *inter alia*, the record of trial and all matters submitted by the appellant in the 14 November 2014 clemency submission.  The CA took action on 14 November 2014.

When a sentence includes a punitive discharge or confinement for one year or more, a CA must receive a written recommendation from his or her SJA before taking action on the case.  Article 60(d), UCMJ; R.C.M. 1106(a).  In that recommendation the SJA must state "whether, in the [SJA's] opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the [SJA]."  R.C.M. 1106(d)(4).

The SJA's failure to do so in this case constitutes error, but we find no prejudice.  As explained below, we find the evidence both factually and legally sufficient to sustain the

---

[22] The appellant's trial defense counsel describes the alleged error under the heading "Factual Sufficiency."  But she then analyzes the matter in terms of both legal and factual sufficiency.  We will examine this AOE as if trial defense counsel had raised both issues, and leave for now the question of whether factual insufficiency alone constitutes "legal error" within the meaning of R.C.M. 1105(b)(2).

appellant's conviction.  We will not find prejudicial error in the SJA's failure to comment on allegations of error when "there is no error in the first instance at trial."  *United States v. Welker*, 44 M.J. 85, 89 (C.A.A.F. 1996) (citation omitted). There being no impact on the appellant's substantial rights, we decline to remand for a new recommendation and action.

## IV.  Legal and Factual Sufficiency

We review questions of factual and legal sufficiency *de novo*.  *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  The test for legal sufficiency is "whether considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt."  *United States v. Humphreys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (internal quotation marks and citations omitted).  In weighing questions of legal sufficiency, the court is "bound to draw every reasonable inference from the evidence in the record in favor of the prosecution."  *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).  The test for factual sufficiency is "whether after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are convinced of the accused's guilt beyond a reasonable doubt.  *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).  Proof beyond a reasonable doubt does not mean, however, that the evidence must be free from conflict. *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001).

The appellant was charged with two specifications of sexual abuse of a child.  For each specification, the Government had to prove the appellant committed a lewd act, that is, sexual contact with the intent to arouse or gratify the sexual desire of any person.  The appellant claims the evidence was both legally and factually insufficient to establish he had such intent.  We disagree.  Both C.A. and J.D. clearly and consistently described how the appellant touched them——C.A. on the thigh, J.D. on the thigh and buttocks.  Although the appellant had been drinking on both occasions, the circumstantial evidence, taken as a whole, shows that the appellant touched them with the intent to gratify his sexual desire.

In C.A.'s case, the appellant moved to sit beside her on the couch, attempted to play with her feet, moved closer to C.A. as she attempted to distance herself from him, and placed his

10

hand on her thigh more than once.  Although drinking, there was no evidence that he was drunk to the point of stumbling or slurring his words.

In J.D.'s case, the appellant twice entered the room where J.D. slept, after earlier staring at her and telling her they would "hang out" that night.  He touched her as he attempted to climb into her bed.  While descriptions of the appellant's level of intoxication varied, none showed him to be so drunk that he was unaware of his actions or their probable results.  In fact, his demeanor and questions after he followed C.A.'s mother and J.D. to J.D.'s home indicate a clear appreciation of what he had done.

After reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact finder could have found all the essential elements beyond a reasonable doubt.  Furthermore, after weighing all the evidence and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

### Conclusion

The findings and the sentence, as approved by the CA, are affirmed.

Senior Judge BRUBAKER and Judge MARKS concur.


For the Court



R.H. TROIDL
Clerk of Court

11