# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.Y. MARKS**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**STEPHEN E. TANNER**
**HOSPITAL CORPSMAN SECOND CLASS (E-5), U.S. NAVY**

**NMCCA 201500053**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 21 October 2014.
**Military Judge:** CAPT F.J. Foil, JAGC, USN.
**Convening Authority:** Commander, Navy Recruiting Command, Millington, TN.
**Staff Judge Advocate's Recommendation:** CDR Todd Kline, JAGC, USN.
**For Appellant:** LT David W. Warning, JAGC, USN.
**For Appellee:** Maj Tracey Holtshirley, USMC; Capt Cory Carver, USMC.

**12 January 2016**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of three specifications of violating a lawful general order and one specification of assault consummated by a battery, in violation of Articles 92 and 128, Uniform Code of Military Justice, 10

U.S.C. §§ 892 and 928.[1]  The military judge sentenced him to 60 days' confinement, reduction to pay grade E-1, and a bad-conduct discharge.  The convening authority (CA) approved the sentence as adjudged.

The appellant raises five assignments of error (AOEs):

(1)  the evidence underlying the conviction of assault consummated by a battery is legally and factually insufficient to prove lack of consent or absence of a mistake of fact as to consent;

(2)  the evidence underlying the conviction for violating a lawful general order—that prohibits a recruiter from engaging in an unduly familiar relationship with a potential recruit—is legally insufficient in that the appellant's attempts to engage in such a relationship were rebuffed;

(3)  the appellant's punishment is inappropriately severe in that the disposition of his case was widely disparate from that of another recruiter who engaged in similar, if not more egregious, conduct;

(4)  the staff judge advocate (SJA) failed to comment on claims of legal error the appellant raised in his clemency request; and,

(5)  the promulgating order misstates one of the specifications of which the appellant was convicted.

After carefully considering the record of trial and the parties' submissions, we find merit in the fifth AOE and will order corrective action in our decretal paragraph.  We are convinced the findings and sentence are otherwise correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred.  Arts. 59(a) and 66(c), UCMJ.

---

[1] The appellant pleaded guilty to three specifications of the lesser included offense of attempting to violate a lawful general order.  After a trial on the merits, the military judge found him guilty of the greater offense as charged.  The appellant pleaded not guilty to all the remaining charges and specifications, and was acquitted of both abusive sexual contact and endeavoring to impede an investigation.  Art. 120 and 134, UCMJ, 10 U.S.C. §§ 920 and 934.

2

## Background

The appellant was a Navy recruiter. In April 2012, the appellant was driving in a government vehicle with a future Sailor, now-Machinist's Mate Fireman (MMFN) TK.[2] The appellant used a discussion of the potential negative effects pregnancy would have on MMFN TK's entry into the Navy as an entrée to talking about sex. MMFN TK did not encourage this conversation, which quickly led to the appellant questioning her about her sexual history and attitudes. He then requested that she perform oral sex on him. She declined.

In March of 2013 the appellant was again in a government vehicle but with a different applicant, now-Hospitalman (HN) MT. As they discussed the application process, the appellant strayed off into sexual matters, asking HN MT about her sexual history, including what sexual positions she liked. HN MT declined to answer, saying such matters were private. Upon arrival at the recruiting station, the appellant requested, and received, a hug from HN MT. The next day, the appellant commented on the size of HN MT's hands, saying she "would hold him well."[3] HN MT interpreted this as referring to her holding his penis.

The following day, while in the government vehicle, the appellant reached over and touched HN MT's upper groin area and asked her to undo her belt and lay back.[4] HN MT refused, and days later told the appellant "[t]here's a line that does not need to be crossed."[5] The appellant responded by saying he "wished there wasn't" and asking HN MT if she wanted to "hang out."[6] When she declined, he asked her for a hug, suggesting they move to the rear of the recruiting station to do so. After receiving the hug, the appellant squeezed HN MT's thigh and commented on the strength of her muscles. He then grabbed the

---

[2] The three young women involved in this case were either applicants or in the Delayed Entry Program at the time of the offenses. All are now on active duty in the Navy. For simplicity's sake, all are referred to here by their rate and rank at the time of trial.

[3] Record at 122.

[4] The appellant and HN MT disagree on whether she invited this touching, which formed the basis for the abusive sexual contact charge of which the appellant was acquitted.

[5] Record at 127.

[6] *Id.*

waistband of HN MT's shorts, but released his hold as she moved away.

A month later, the appellant was in the recruiting station with another applicant, now-Information Systems Technician Seaman (ITSN) JS. As ITSN JS went to leave, the appellant hugged her and whispered to her a request to call him. ITSN JS returned some days later to fill out application paperwork. When other applicants left, she found herself in the station alone with the appellant. After locking the front door, the appellant began asking ITSN JS questions about her sexual history, including what positions she liked, what type of underwear she wore, and whether she had ever had sex with a married man. He also asked what he was "going to do when his wife smells [ITSN JS's] perfume on him."[7] ITSN JS tried to avoid answering his questions, responding either "No" or "I don't know."[8]

The appellant then took ITSN JS's hand and attempted to roll her chair towards the back of the office. When she refused to go, he smiled and unlocked the door. As ITSN JS was leaving, the appellant cautioned her: "You wouldn't want to tell anybody about this. It would hurt your career and mine."[9]

Additional facts necessary to address the AOEs will be provided below.

**Discussion**

**I. The Assault Consummated by a Battery**

We review questions of factual and legal sufficiency *de novo*. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt." *United States v. Humphreys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citations and internal quotation marks omitted). In weighing questions of legal sufficiency, the court is "bound to draw every reasonable inference from the evidence in the record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134

---

[7] *Id*. at 168.

[8] *Id*. at 169.

[9] *Id*. at 171.

(C.A.A.F. 2001) (citations omitted). The test for factual sufficiency is "whether after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). Proof beyond a reasonable doubt does not mean, however, that the evidence must be free from conflict. *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001).

The appellant was charged with one specification of assault consummated by a battery. To convict the appellant of this offense, the Government had to prove the appellant (1) did bodily harm to HN MT, and (2) that the harm was done with unlawful force or violence. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶¶ 54b(2) and 54c(2). "'Bodily harm' means any offensive touching of another, however slight." *Id*. at ¶ 45a(g)(3). The appellant claims the Government failed to prove the touching was offensive, in that the evidence was both legally and factually insufficient to establish (1) lack of consent and (2) lack of a mistake of fact as to consent. We disagree.

HN MT testified she neither consented to, nor in any way encouraged, the touching. In the days immediately preceding the alleged assault, HN MT: (1) declined to discuss her sexual history when asked, telling the appellant it was a private matter; (2) grabbed the appellant's hand and stopped him when he touched her on the upper groin area; (3) told the appellant that, regarding his touching her, there was "a line that did not need to be crossed;" and, (4) indicated she did not wish to "hang out" with the appellant. While the appellant points to HN MT's acquiescence to his requests for a hugs as evidence of consent, the totality of the circumstances clearly shows she did not consent to the touching of her waist or thigh. And, even if we accept the appellant's claims that he honestly believed HN MT was consenting, the totality of HN MT's behavior with the appellant makes any such belief objectively unreasonable.

After reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. Furthermore, after weighing all the evidence and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

**II. The Unduly Familiar Relationship**

At trial, the appellant admitted that he engaged in the sexual discussions, comments and requests with MMFN TK, HN MT, and ITSN JS with the intent to "form a dating or private social relationship" with them.[10] He denied violating the general order[11] that prohibited such unduly familiar relationships, however, contending that his attempts to form such prohibited relationships with these women were frustrated by their rebuffing his advances.

In finding the appellant guilty of violating a lawful general order—and not just the attempt thereof to which the appellant pleaded guilty—the military judge stated the following:

> And specifically I want to put on the record that this court in regards to Charge I finds that the accused was put on notice under the Charge by listing the specific general order that he violated, the general order under section 9A specifically states, "Prohibited activities. Recruiting personnel shall not form or attempt to form a dating or private social relationship with anyone known to be a prospect, applicant or future Sailor." Also, the court finds that the series of inappropriate sexual questions by the accused to each of the three victims on multiple occasions to be acts that would be engaging in an unduly familiar relationship.[12]

We agree with the military judge's findings. The appellant mistakenly seeks to draw the line of "unduly familiar relationship" at sexual activity. In truth, he crossed the line

---

[10] *Id.* at 91, 94, 97.

[11] Commander, Navy Recruiting Command Instruction (COMNAVCRUITCOMINST) 5370.1F, dated 12 October 2011.

[12] Record at 316. The appellant claims the military judge erred in looking beyond the specific language of the paragraph identified in the three specifications under Charge I. That language, in paragraph 5 of COMNAVCRUIT-COMINST 5370.1F, prohibits "personal relationships that are unduly familiar between recruiting personnel and prospects, applicants and Future Sailors." The word "attempt" is only found in paragraph 9 of that instruction (quoted by the military judge). As we agree with the military judge that the appellant did more than simply attempt to engage in an unduly familiar relationship, we find no error in this superfluous reference to paragraph 9.

when he engaged in unprofessional discussions regarding the victims' sexual activities and preferences and, in HN MT's case, requested and received hugs. These conversations and conduct involved a level of familiarity not required by the recruiting process. The simple fact these three relationships did not extend to sex does not mean they were not unduly familiar.[13] Indeed, we are convinced they were unduly familiar.

## III. Widely Disparate Disposition

We review sentence appropriateness *de novo*. *United States v. Baier*, 60 M.J. 382, 383-84 (C.A.A.F. 2005). In determining whether a sentence is appropriate we will only engage in sentence comparison in the rare instances of highly disparate sentences in closely-related cases. *United States v. Lacy,* 50 M.J. 286, 288 (C.A.A.F. 1999). If this threshold is met, we will then determine whether any rational basis for the disparity exists. *Id.*

During the sentencing phase of the court-martial, the defense offered evidence[14] of misconduct by another recruiter at the appellant's office. That recruiter, Electrician's Mate Petty Officer Third Class (EM3) JC, allegedly engaged in sexual relationships with two applicants. As a result, the Commanding Officer of Navy Recruiting District (CO, NRD) New Orleans processed EM3 JC for administrative separation from the Navy for violating COMNAVCRUITCOMINST 5370.1F. The characterization of EM3 JC's discharge was "UNDER HONORABLE CONDITIONS (GENERAL)."[15] There is no indication whether EM3 JC was disciplined for the alleged misconduct.

The military judge admitted this evidence over the Government's objection, saying he would "give it the appropriate weight it deserves."[16] The appellant's civilian defense counsel again raised the issue of EM3 JC in the appellant's RULE FOR COURTS-MARTIAL 1105, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), clemency submission, labeling the disparate treatment as "Legal Error."

---

[13] The instruction at issue supports this conclusion, as it specifically addresses sexual relations between recruiters and applicants in a separate paragraph from that which prohibits unduly familiar relationships.

[14] Defense Exhibit E.

[15] *Id.* at 1.

[16] Record at 405.

As EM3 JC was neither tried nor sentenced by a court-martial, the issue before us involves differences of initial disposition, rather than sentences. It is, however, within this court's broad power under Article 66(c), UCMJ, to consider such matters in reviewing sentence appropriateness. *United States v. Stotler,* 55 M.J. 610, 612 (N.M.Ct.Crim.App. 2001) (citing *United States v. Noble,* 50 M.J. 293, 295 (C.A.A.F. 1999)).

We note the great disparity between EM3 JC's administrative discharge and the appellant's conviction and punishment. However, we conclude the appellant has not shown that his and EM3 JC's offenses are closely related.[17]

First, although the appellant and EM3 JC were recruiters in the same office engaged in similar misconduct, they did not do so as part of any common scheme. There is no evidence either knew of the other's misconduct while it was occurring.

Second, there is no evidence indicating that EM3 JC engaged in any non-consensual activity. In contrast, the appellant was convicted of assaulting a young woman who had sought his assistance in joining the Navy.

Third, the decision to administratively process EM3 JC was made by the CO, NRD New Orleans—not the Commander, Navy Recruiting Command, the CA in this case.

Fourth, the CA was well within her authority to refer the charges against the appellant to a general court-martial. The appellant was charged, *inter alia*, with abusive sexual contact. The Article 32, UCMJ, investigating officer found probable cause to believe the appellant committed that offense—an offense clearly appropriate for referral to a general court-martial. *See Noble,* 50 M.J. at 295 (finding it appropriate for a Court of Criminal Appeals to cite charges of which an appellant was acquitted for purposes of examining a CA's decision to refer an appellant's case to a court-martial while administratively disposing of a closely related case). We find this fact alone to be a sufficiently good and cogent reason for the difference in the dispositions.

---

[17] The Court of Appeals for the Armed Forces has given the following examples of "closely related" cases: "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared[.]" *Lacy,* 50 M.J. at 288.

## IV.  Failure to Comment on Allegations of Legal Error

When a sentence includes a punitive discharge or confinement for one year or more, a CA must receive a written recommendation from his or her SJA before taking action on the case.  Art. 60(d), UCMJ; R.C.M. 1106(a).  In that recommendation the SJA must state "whether, in the [SJA's] opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the [SJA]." R.C.M. 1106(d)(4).

The appellant alleges that the SJA's failure to comment on allegations of legal error raised in the appellant's R.C.M. 1105 clemency submission requires we remand this case for new post-trial processing.  We disagree.

In the clemency submission, the appellant's civilian defense counsel alleged two legal errors:  first, that the SJA erred in advising the CA that there were no companion cases; and, second, that trial counsel was allowed to make improper rebuttal argument.  We find neither allegation to have merit and will not find prejudicial error in an SJA's failure to comment on allegations of error when "there is no error in the first instance at trial." *United States v. Welker*, 44 M.J. 85, 89 (C.A.A.F. 1996) (citation omitted).  There being no impact on the appellant's substantial rights, we decline to remand for a new recommendation and action.

## IV.  Error in the Promulgating Order

The promulgating order erroneously reflects that Specification 3 of Charge I states that the offense occurred "on divers occasion [sic], between on or about 1 March 2013 and on or about 31 March 2013."[18]  The specification actually alleged that the offense occurred on a single occasion "on or about April 2012."[19]

We test this error under a harmless-error standard. *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998) (citation omitted).  The appellant alleges no prejudice resulting from this error, and we find this error did not materially prejudice the appellant's substantial rights. However, the appellant is entitled to accurate court-martial

---

[18] CA's Action of 9 Feb 2015 at 1.

[19] Charge Sheet.

records.  *Id.*  Accordingly, we order the necessary corrective action in our decretal paragraph.

## Conclusion

The findings and the sentence as approved by the CA are affirmed.  The supplemental promulgating order shall correctly reflect the language of Specification 3 of Charge I.

For the Court



R.H. TROIDL
Clerk of Court