# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, D.C. KING, B.T. PALMER**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## MICHAEL A. SAINE II
## BUILDER FIRST CLASS (E-6), U.S. NAVY

### NMCCA 201500082
### GENERAL COURT-MARTIAL

**Sentence Adjudged**: 30 October 2014.
**Military Judge**: CDR Robert P. Monahan, Jr., JAGC, USN.
**Convening Authority**: Commander, Navy Region Mid-Atlantic, Norfolk, VA.
**Staff Judge Advocate's Recommendation**: CDR S.J. Gawronski, JAGC, USN.
**For Appellant**: Capt Michael Magee, USMC.
**For Appellee**: CDR James Carsten, JAGC, USN; Capt Cory Carver, USMC.

### 31 December 2015

---
### OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of one specification of violating a lawful order, one specification of sexual assault by bodily harm, and one specification of assault consummated by a battery, in violation of Articles 92, 120, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920,

and 928, respectively. The military judge sentenced the appellant to three years of confinement, reduction to pay grade E-3, and a bad-conduct discharge. Other than to defer and then suspend automatic forfeitures for six months, a pretrial agreement had no effect on the sentence. The convening authority (CA) approved the sentence as adjudged and except for the punitive discharge ordered it executed.

The appellant raises four assignments of error (AOE):[1]

(1) the appellant was denied due process when he was subject to a military prosecution following a civilian law enforcement investigation that did not result in a prosecution;

(2) the findings and sentence should be set aside due to poor pretrial handling and investigation by law enforcement agents;

(3) the appellant's guilty pleas were not provident; and

(4) the appellant's sentence was too severe.

Additionally, this court identified an issue concerning the staff judge advocate's (SJA) failure to comment on claims of legal error the appellant raised in his clemency request.

After careful consideration of the record of trial, the appellant's assignments of error, the identified issue, and the pleadings of the parties, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## Background

In August 2012, the appellant was engaged in sexual intercourse with his wife, in their off-base residence, when she told him to stop. The appellant admitted he understood she had withdrawn her consent, yet he continued to engage in intercourse until he ejaculated.

On 25 November 2013, during an argument, the appellant pushed his wife into a bathtub. The appellant testified that he

---

[1] The appellant raises all AOEs pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

2

did so three to four minutes after she hit him in the head with a can of shaving cream.[2]  The appellant agreed that he was not acting in self-defense when he assaulted his wife.[3]

On 5 December 2013, the appellant's commanding officer (CO) issued him a written military protective order to remain 200 feet away from his wife.  On 15 January 2014, the CO renewed the order and provided the appellant a signed copy.  On 15 February 2014, the appellant intentionally violated the order by meeting his wife and son at a local hotel.

**Analysis**

**I.  Whether the appellant was denied due process and an adequate criminal investigation (AOEs 1 and 2)**

The appellant's first AOE asserts he was denied due process when he was prosecuted by his command following an investigation that was initially conducted by civilian authorities.  His second AOE argues the Naval Criminal Investigative Service was biased against him and failed to fully investigate the case.  Given the related nature of these two AOEs, we combine and examine them together.  After doing so, we find both lack merit.

Other than invoking the Fourteenth Amendment of the U.S. Constitution,[4] the appellant provides no case law, cites no specific regulatory non-compliance by the Government, and offers only vague arguments in support of AOEs 1 and 2.[5]  Moreover, the appellant raises these claims for the first time on appeal.

Claims of due process violations are questions of law that we review *de novo.  United States v. Lewis*, 69 M.J. 379, 383 (C.A.A.F. 2011).  In general, a plea of guilty waives non-jurisdictional errors, which occurred prior to the entry of the guilty plea.  *United States v. Bradley*, 68 M.J. 279, 281 (C.A.A.F. 2010); *see also United States v. Lee*, 73 M.J. 166, 167 (C.A.A.F. 2014).  The record before us indicates the appellant

---

[2]  During sentencing, the appellant's wife testified that she threw the can *after* the appellant pushed her.  Record at 643.

[3]  *Id*. at 575-81.

[4]  U.S. CONST. amend. XIV, § 1.

[5]  To support his AOEs, the appellant generally relies on his 7 May 2015 Request for Clemency, Parole, and Mandatory Supervised Release, which he appends to his Brief.  *See* Appellant's Brief of 14 Jul 2015 at 4-5 and the Appendix thereto.

freely and unconditionally pleaded guilty and thereby forfeited his right to appellate review of the nonjurisdictional issues he now raises.  Even if we assumed the appellant neither waived nor forfeited these issues, our full review of his  first two AOEs indicate they are without merit.  *United States v. Clifton,* 35 M.J. 79, 81 (C.M.A. 1992).

## II.  **Whether the appellant's pleas were provident (AOE 3)**

In his third AOE, the appellant argues his pleas were not provident because he pleaded guilty under the "duress caused by the stressful situation in which he was placed, including the actions of [his wife] toward their son."[6]  He also argues the military protective order he was convicted of violating was not lawful and that his violation of that order occurred under "extraordinary circumstances."[7]  With regard to the sexual assault of his wife he now contends that he was in "mid-climax and could not [stop his intercourse] quickly enough."[8]  Regarding his assault and battery of his wife, he now argues he was acting in self-defense and in defense of his wife, fearing she was attempting suicide.[9]  All the appellant's arguments are directly contradicted by the record and he offers no case law or legal arguments to justify substituting his current assertions for his previous in-court sworn testimony.

"A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (citations and internal quotation marks omitted).  We will not disturb a guilty plea unless the record of trial shows a substantial basis in law or fact for questioning the guilty plea.  *Id.*  To prevent the acceptance of improvident pleas, the military judge is required to develop the factual basis, on the record, that "the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty." *United States v. Care*, 40 C.M.R. 247, 253 (C.M.A. 1969) (citations omitted); *see also* Art. 45, UCMJ.  The appellant must admit every element of the offense to which he pleads guilty. *United States v. Aleman*, 62 M.J. 281, 283 (C.A.A.F. 2006); *see also* RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  If the military judge fails to establish that there is an adequate basis in law

---

[6]  Appellant's Brief at 5.

[7]  *Id.* and pages 4-5 of the Appendix thereto.

[8]  *Id.* at 5.

[9]  *Id.*

4

or fact to support the appellant's plea during the *Care* inquiry, the plea will be improvident. *Inabinette*, 66 M.J. at 322; *see also* R.C.M. 910(e). This court "must find 'a substantial conflict between the plea and the [appellant's] statements or other evidence' in order to set aside a guilty plea. The 'mere possibility' of a conflict is not sufficient." *United States v. Watson*, 71 M.J. 54, 58 (C.A.A.F. 2012) (quoting *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996)). "In determining on appeal whether there is a substantial inconsistency, this Court considers the 'full context' of the plea inquiry, including Appellant's stipulation of fact." *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011) (citing *United States v. Smauley*, 42 M.J. 449, 452 (C.A.A.F. 1995)).

The record does not support the appellant's claim that he pleaded guilty under stress-induced duress. We find the military judge sought and obtained assurances from the appellant that: he pleaded guilty voluntarily and that no one threatened or forced him to plead guilty; no one threatened or forced him to agree to the stipulation of fact; he entered into his pretrial agreement "freely and voluntarily;" he understood he could request to withdraw his guilty pleas at any time before sentence was announced; no one attempted to coerce or force him to give up his right to a trial; he agreed the defenses of self-defense and duress did not apply in his case; he "freely and voluntarily" agreed to all specially-negotiated terms in his pretrial agreement and the addendum thereto in which he specifically waived his motions; and, after being advised of all terms and conditions in his pretrial agreement the appellant still desired to plead guilty.[10]

Furthermore, the military judge, *sua sponte*, began the providence inquiry by examining whether the appellant's medication for anxiety and depression might render him mentally incompetent to understand the nature of the proceedings or to cooperate intelligently in his defense. The military judge tested the appellant's understanding of the court-martial process; the roles of the judge, prosecutor, and defense counsel; and his ability to communicate with and understand his defense counsel. The appellant stated there were no adverse effects from his medication. His trial defense counsel (TDC) concurred with the military judge's assessment of the appellant's competence.[11] In circumstances, as here, where the

---

[10] Record at 528, 536, 569-85, 596, 601, 604, 607, 609, 620, 622, 624, 625, 628, 631, 632, 633, 634; Appellate Exhibit LIII.

[11] *Id*. at 530-34.

appellant's in-court statements do not raise an apparent inconsistency with his pleas, a "military judge may reasonably rely on both a presumption that the accused is sane and the long standing principle that counsel is presumed to be competent." *United States v. Shaw*, 64 M.J. 460, 463 (C.A.A.F. 2007) (citations omitted). We find the appellant's responses to the military judge's questions established both his competence and his ability to cooperate intelligently in his defense. We also find the appellant was given multiple opportunities to voice any concerns about duress or his stress levels, and on each occasion he stated under oath, in the presence of his TDC, that his pleas were voluntary.[12]

The trial record contradicts the appellant's claim that the order he admitted to violating was unlawful. The record also contradicts his assertion that he violated the order under the "extraordinary circumstances" of fearing for his son's safety.[13] During the providence inquiry, the appellant admitted all the elements of the offense and stated that the order was issued by proper authority, that he was aware of and understood the order, that the order was lawful, and that he freely made the decision to violate the order. The appellant testified that no person or anything forced him to violate the order, and that he had no legal justification or excuse for doing so.[14] Additionally, prior to entering pleas, the appellant filed a motion challenging the military protective order's constitutionality. The military judge, via three trial conferences[15] later memorialized on the record and during the providence inquiry, ensured the appellant was fully aware and agreed his guilty

---

[12] We note the appellant's acceptance of a pretrial agreement, which provided significant tangible benefits to him, certainly appears to be a rational, sound decision on his part. Not only did the pretrial agreement substantially limit his exposure to confinement, but it also compelled the Government to withdraw and dismiss a conspiracy charge, a second orders violation specification, two rape specifications, six specifications of assault consummated by a battery, a specification of child endangerment, a specification of obstructing justice, and a specification of subornation of perjury. Arts. 81, 92, 120, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, 920, 928, and 934 respectively. *See also* AE LII at 6 and 7.

[13] The appellant now contends his wife had threatened his infant son with a knife, that she allowed him to crawl "in a pile of pills," and that she had left him at a store without a coat in freezing weather. *See* Appellant's Brief at 4-5 and the Appendix thereto at 3-4.

[14] Record at 545-57.

[15] Conducted pursuant to R.C.M. 802.

6

pleas would result in the waiver of all pretrial motions, which included his motion challenging the lawfulness of the military protective order.[16] Even if we assume the issue was not waived, we remain convinced, based on the entirety of the record, that the military order the appellant admitted violating was in fact lawful. *Clifton,* 35 M.J. at 81.

The trial record contradicts the appellant's claim that he was unable to halt sexual intercourse with his wife and that she manufactured her lack of consent. During the providence inquiry the appellant admitted he was engaged in sexual intercourse with his wife, that she told him to stop, that he heard her and understood she was no longer consenting, that he continued to have intercourse with her knowing she no longer consented, that he did not stop because he wanted to ejaculate, that his unwanted sexual intercourse caused bodily harm to his wife and was offensive to her, that no one forced or coerced him to have sex without her consent, that he could have stopped if he wanted to, and that he understood the reasonable mistake of fact defense[17] and both he and his TDC agreed it did not apply in his case.[18]

The trial record contradicts the appellant's claim that during his wife's battery he was acting in self-defense and, conversely, in defense of his wife who he now asserts was attempting suicide. During the providence inquiry the appellant admitted he assaulted his wife by pushing her with unlawful force and violence so that she fell into a bathtub; that he did so because he was angry with her; that at the time of the assault she was not threatening him with force or violence; that he understood the defense of self-defense[19] (as correctly explained by the military judge) and that he and his TDC agreed it did not apply; that he had no legal justification or excuse for pushing his wife; that no one forced or coerced him to do

---

[16] The appellant filed motions for release from pretrial confinement; to sever charges; to suppress the appellant's statements; to admit evidence under MILITARY RULE OF EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.); to compel funding for an independent investigator; to compel funding for an expert; to dismiss certain charges as unconstitutional; and for an in-camera review under MIL. R. EVID. 513. Record at 385-88, 395, 505-09, 625-31. *See also* AE I, XVI, XVIII, XX, XXII, XXIV, XXVI, XXVIII, LII, and LIII.

[17] R.C.M. 916(j).

[18] Record at 558-69.

[19] R.C.M. 916(e)(3).

so; and that he could have avoided doing so if he wanted.[20] Further, the appellant admitted that his wife was not attempting suicide when he pushed her; that she had no weapon or other means to harm herself; that she was not threatening to harm herself; that he did not believe by pushing her he was attempting to save her from killing or harming herself; that he understood the defense of duress[21] (as correctly explained by the military judge); and that he and his TDC agreed it did not apply in his case.[22]

Taken together, we find the record directly contradicts all the claims raised in the appellant's third AOE. Further, we find the military judge carefully and deliberately developed the factual basis for the appellant's acts that comprised the offenses for which he pleaded guilty. The military judge correctly instructed the appellant on the elements, applicable defenses, and relevant definitions associated with each offense. The appellant acknowledged understanding the military judge's explanations and then admitted every element of each offense, after explaining, in detail, in his own words, how he committed each crime. Additionally, the appellant's statements made during the providence inquiry were consistent with a stipulation of fact admitted without objection pursuant to the appellant's pre-trial agreement.[23] Finding no substantial basis in law or fact for questioning the appellant's guilty pleas, we will not disturb them. *Inabinette*, 66 M.J. at 322. We find the appellant's pleas were provident and that the military judge did not abuse his discretion in accepting them.

## III. Whether the appellant's sentence was too severe (AOE 4)

In his final AOE, the appellant argues that his sentence was inappropriately severe based on his character and record of service. We disagree.

This court reviews the appropriateness of a sentence *de novo. United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988); *see also United States v. Baier*, 60 M.J. 382,

---

[20]  Record at 569-80.

[21]  R.C.M. 916(h).

[22]  Record at 573-74, 581-85.

[23]  *See* Prosecution Exhibit 1.

383 (C.A.A.F 2005). Our review gives "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

The record contains evidence in extenuation and mitigation from the appellant, his ex-wife, his grandmother, his children, a childhood friend, and a fellow petty officer. The record also contains aggravation testimony concerning the appellant's sexual assault and later physical assault of his current wife. This includes testimony of the humiliation and degradation his wife experienced as a result of his sexual assault, the pain and fear associated with his physical assault, and her anxiety, depression, and loss of self-esteem created by his pattern of abuse toward her.[24]

After reviewing the record and pleadings, we find the appellant's adjudged and approved sentence is appropriate for this offender and his offenses. *Baier*, 60 M.J. at 384-85; *Healy*, 26 M.J. at 395-96. The facts that the adjudged sentence included only three years' confinement, two years less than the negotiated protections in his pre-trial agreement, and 28 years less than the potential maximum; that the appellant was not awarded forfeitures; that the appellant was only reduced three pay grades; and that the appellant was awarded a bad-conduct discharge instead of a dishonorable discharge, reflect substantial credit for the appellant's evidence in extenuation and mitigation. Weighing the gravity of the appellant's offenses against his character and service, we find his sentence appropriate.

Lastly, the appellant supports his brief with an appended copy of his clemency and parole petition, wherein he, not surprisingly, asks for clemency. Clemency, however, is not within the authority of this court to grant, and we therefore take no action on such request. *See Healy*, 26 M.J. at 395.

## IV. Whether the SJA's recommendation was defective

Although not raised by the parties, we note the appellant raised legal error in post-trial submissions that were subsequently not addressed in the SJA's recommendation to the CA. On 23 January 2015, the appellant's TDC submitted a R.C.M.

---

[24] Record at 641-44, 650-53, 657-58, 660-61, 681, 690-91.

1105 clemency request wherein he alleged the military judge imposed disparate punishment upon him and cited as evidence thereof two rape cases in which the offenders received lighter sentences. Additionally, he asserted the military judge improperly considered the appellant's dismissed charges when arriving at his sentence arguing the "military justice system prohibits such [a] spillover effect."[25]

When a sentence includes a punitive discharge or confinement for one year or more, a CA must receive a written recommendation from his or her SJA before taking action on the case. Art. 60(d), UCMJ; R.C.M. 1106(a). In that recommendation the SJA must state "whether, in the [SJA's] opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the [SJA]." R.C.M. 1106(d)(4). Notwithstanding this requirement, the 3 February 2015 SJA's recommendation and the 20 February 2014 SJA's addendum recommendation, advised the CA that the defense had not raised any allegations of legal error.[26] On 24 February 2015, the TDC acknowledged receipt of the SJA's recommendation, and in a handwritten annotation stated: "The Defense has no corrections, challenges, or comments to submit."[27]

"If defense counsel does not make a timely comment on an error or omission in the SJA's recommendation, the error is waived unless it is prejudicial under a plain error analysis." [28] *United States v. Capers*, 62 M.J. 268, 269 (C.A.A.F. 2005) (citations and internal quotation marks omitted); R.C.M. 1106(f). To prevail under a plain error analysis, the appellant must persuade this Court that: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Scalo*, 60 M.J. 435, 436

---

[25] SJA's Recommendation of 3 Feb 2015, Enclosure 10 at 2.

[26] *Id*. at 2 and SJA's Addendum Recommendation of 20 Feb 2015.

[27] TDC's Acknowledgment of Receipt of the SJA Addendum Recommendation of 24 Feb 2015 at 1.

[28] Although the court in *Capers* characterized the defense's failure to make a timely comment as waiver, it is clear from their analysis they actually treated it as a "forfeited" issue. *Capers*, 62 M.J. at 269. "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right. . . . [i]f an appellant has forfeited a right by failing to raise it at trial, we review for plain error." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citations and internal quotation marks omitted).

(C.A.A.F. 2005) (citation and internal quotation marks omitted).
The prejudice prong involves a relatively low threshold -- a
demonstration of "some colorable showing of possible prejudice."
*Capers*, 62 M.J. at 269-70 (citations and internal quotation
marks omitted).  Our review is *de novo*.  *Id*. at 270.

We find the appellant did not timely comment on the
omissions in the SJA's recommendation, and thus apply a plain
error analysis.  We first examine for error.  Although not
actually using the words "legal error" in his R.C.M. 1105
clemency request, the appellant argued he was more severely
punished than similar offenders in the same judicial circuit and
claimed the military judge's alleged "spillover" was prohibited.
As discussed *infra,* military appellate courts have extensively
examined both issues.  Additionally, "spillover" arises so
frequently a standardized military judge instruction was crafted
to educate members on this concern.[29]  As such, the SJA should
have recognized both issues as warranting discussion in his
advice to the CA.  We find this omission to be plain and obvious
error.

We next assess for prejudice.  To do so we examine the
issues raised in the appellant's clemency request for error
occurring at trial.  *United States v. Welker*, 44 M.J. 85, 89
(C.A.A.F. 1996).  We address the appellant's disparate sentence
claim first.

Sentence appropriateness is generally determined without
reference or comparison to sentences in other cases.  *United
States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985).  We are not
required to engage in a comparison of specific cases "'except in
those rare instances in which sentence appropriateness can be
fairly determined only by reference to disparate sentences
adjudged in closely related cases.'"  *United States v. Lacy*, 50
M.J. 286, 288 (C.A.A.F. 1999) (quoting *Ballard*, 20 M.J. at 283)
(additional citation omitted).  "Closely related" cases "involve
offenses that are similar in both nature and seriousness or
which arise from a common scheme or design."  *United States v.
Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994)*; see also Lacy*, 50
M.J. at 288 (citing examples of closely related cases as
including co-actors in a common crime, service members involved
in a common or parallel scheme, or "some other direct nexus
between the servicemembers whose sentences are sought to be
compared.")  The appellant bears the burden of demonstrating

---

[29]  Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook,
para. 7-17 (10 Sept. 2014) (citing *Hogan*, 20 M.J. 71 (C.M.A. 1985)).

11

that any cited cases are "closely related" to his case and that the sentences are "highly disparate." *Id.*

We find the appellant failed to demonstrate, for the CA or this court, that his two cited cases were closely related to his own. Although characterized as rape cases tried in the same circuit, the appellant did not provide the case names, the trial dates, or even whether they were tried before the same military judge who heard his case. Further, other than noting the unidentified servicemembers in those cases received less severe sentences, he provided no amplifying information on related charges, or the age, grade, or service of the accused or victims. Demonstrating the cases are closely related is a "threshold requirement for the review of . . . sentence comparison." *Kelly*, 40 M.J. at 570. The appellant did not meet this threshold, thus we conclude we are neither required nor even able to conduct a sentence comparison.

We next turn to the appellant's claim that the military judge allowed information related to the dismissed charges to "spillover" into his deliberations on sentence. Other than highlighting extenuating matters relevant to the appellant's convictions and relying on his disparate sentencing argument, supra, the appellant offers no evidence to support his claim the military judge permitted "spillover" to occur. Accordingly, we resolve the appellant's claim by recognizing military judges are presumed to know the law and follow it absent clear evidence to the contrary, *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007). We find the appellant has provided no clear evidence that the military judge failed to follow the law and therefore find no error.

Regarding both assertions of error raised in the appellant's R.C.M. 1105 matters, we find no actual error occurred at trial, thus no colorable showing of possible prejudice and no impact on the appellant's substantial rights. *Welker*, 44 M.J. at 89; *Capers*, 62 M.J. at 270. Because of the absence of error or prejudice, we find that had the SJA identified and addressed the raised legal error, it would not have led to a favorable recommendation or corrective action by the CA. We therefore decline to remand for a new recommendation and action. *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996).

12

**Conclusion**

The findings and the sentence are affirmed.



For the Court


R.H. TROIDL
Clerk of Court