# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

―――――――――――

**No. ACM S32547**

―――――――――――

**UNITED STATES**
*Appellee*

**v.**

**Nicholas D. MONROE**
Senior Airman (E-4), U.S. Air Force, *Appellant*

―――――――――――

Appeal from the United States Air Force Trial Judiciary

Decided 10 April 2020

―――――――――――

*Military Judge:* Jennifer E. Powell.

*Approved sentence:* Bad-conduct discharge, confinement for 4 months, forfeiture of $1,000.00 pay per month for 4 months, reduction to E-1, and a reprimand. Sentence adjudged 20 June 2018 by SpCM convened at Beale Air Force Base, California.

*For Appellant:* Captain David A. Schiavone, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Michael T. Bunnell, USAF; Mary Ellen Payne, Esquire.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges.*

Judge LEWIS delivered the opinion of the court, in which Senior Judge MINK and Judge D. JOHNSON joined.

―――――――――――

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

―――――――――――

LEWIS, Judge:

A special court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and a pretrial agreement (PTA), of seven specifications of wrongful use and possession of controlled substances

(lysergic acid diethylamide (LSD), marijuana, and psilocybin) and wrongful distribution of marijuana, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for four months, forfeiture of $1,000.00 pay per month for four months, reduction to the grade of E-1, and a reprimand. The convening authority approved the adjudged sentence.[2]

Appellant raises two assignments of error: (1) whether he is entitled to sentence relief when he was denied access to medications during post-trial confinement; and (2) whether the staff judge advocate (SJA) provided incomplete advice to the convening authority when Appellant raised concerns about his post-trial confinement conditions during clemency. We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

Appellant's Air Force career had a promising start and a troublesome end. While in technical training, Appellant met his future wife who was completing her training in a different career field. The two agreed to attempt a long-distance relationship. Appellant moved to his first assignment at Joint Base Andrews, Maryland, and his future wife headed west for her first assignment at Beale Air Force Base (AFB), California.

After a few months of being geographically separated, the couple decided to get married and pursue the Join Spouse Assignment Program[3] where Appellant could move to Beale AFB. They eventually married and secured the join spouse assignment to Beale AFB, but before Appellant could move their marriage began to deteriorate. The couple decided to give their marriage one more chance, and Appellant made the move across country. Unfortunately, their relationship did not improve when Appellant arrived in California. To

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Pursuant to the PTA, the convening authority dismissed with prejudice one specification alleging wrongful possession of cocaine, in violation of Article 112a, UCMJ. Also per the PTA's terms, the convening authority dismissed with prejudice certain words from two specifications: (1) from the wrongful possession of LSD specification, Specification 1 of the Charge, the words "with the intent to distribute the said lysergic acid diethylamide;" and (2) from the wrongful possession of marijuana specification, Specification 3 of the Charge, the words "with the intent to distribute the said marijuana." Finally, the PTA's terms did not affect the sentence the convening authority could approve.

[3] Air Force Instruction 36-2110, *Total Force Assignments*, Attachment 8 (5 Oct. 2018).

complicate matters further, Appellant hated his new workplace and began having suicidal thoughts.

In an attempt to cope, Appellant decided to self-medicate by using marijuana. Eventually Appellant and his wife divorced. After the divorce, Appellant's marijuana habit expanded to the point where he used four to six times per week and kept a supply of it at his house. As his civilian friends were well aware of his marijuana habit, one of them asked Appellant to sell her marijuana. He agreed and gave her a gram of marijuana at no cost. At trial, Appellant pleaded guilty to use, possession, and distribution of marijuana.

In addition to marijuana, Appellant began to seek out other illegal drugs. Around this time, Appellant began living with a new civilian roommate who shared his interest in illegal drugs, specifically LSD and psilocybin mushrooms.

Regarding LSD, Appellant and his roommate agreed to jointly purchase a "sheet" of the drug, between 50 and 100 doses, for $800.00. The civilian seller mailed Appellant the sheet of LSD inside of a birthday card. When Appellant and his roommate attended a rave, they bought more LSD. The roommates stored the LSD obtained from both sources at their house, and Appellant used it multiple times, usually ingesting two or three tabs at a time. At trial, Appellant pleaded guilty to using and possessing LSD.

For the psilocybin mushrooms, Appellant and his roommate also pooled their money together to obtain the drug. Appellant stored the mushrooms at his house and ingested some of them. At trial, Appellant pleaded guilty to using and possessing psilocybin, a Schedule I controlled substance.

In June 2017, Appellant's drug involvement came to light when he provided a urine sample that tested positive for tetrahydrocannabinol (THC), the active ingredient in marijuana. In a subsequent search of his house, agents from the Air Force Office of Special Investigations (AFOSI) seized tabs of LSD, about three grams of mushrooms, and paraphernalia used to smoke marijuana. After waiving his right to remain silent and to have counsel present, Appellant described his drug offenses and informed the AFOSI agents that he was considering suicide. The AFOSI agents properly shared Appellant's suicidal ideations with Appellant's chain of command, which led to Appellant agreeing to inpatient treatment. At trial, Appellant credited this treatment with giving him the coping strategies and communications skills that he was lacking. He summarized for the military judge, "I gained a lot from that place and think if I had gone there months sooner, before I resorted to drugs to fix my problems, things would be different now."

After trial adjourned, on 20 June 2018, Appellant was ordered into post-trial confinement. During a medical examination, Appellant was found "fit" for

confinement and began his term of confinement at the Sutter County Jail in California. On 11 July 2018, Appellant was transferred to the military confinement facility at Vandenberg AFB, California. In September 2018, while post-trial processing in his case was still on-going, Appellant twice raised concerns using the prisoner grievance system that he was running out of an important medication.

On 4 September 2018, Appellant filed his first grievance, via a Department of Defense (DoD) Form 510. Appellant requested "a refill on my meds/an appointment with my provider ASAP." On 5 September 2018, Senior Airman (SrA) SA, who worked at the confinement facility, responded to the first grievance by writing, "Appointment made."

Dissatisfied with the response, on 5 September 2018, Appellant filed a second grievance. He wrote on a second DoD Form 510:

> [Appointments] to ensure proper [refills] of medication are not being made, 3 weeks ago an appointment was supposed to be made. Now I am going to be without [an] important medication for a week. When expressing concern to the guards I was rudely brushed off, it is [definitely] possible to call in and request a refill without a provider visit, just to last me [until] my next appointment. Being dismissed and told "you are fine" is a poor response.

Two days later, on 7 September 2018, the noncommissioned officer in charge (NCOIC) of confinement, Technical Sergeant (TSgt) DS, responded to Appellant in writing: "Inmat[e] was instructed on procedures to make medical visits and reminded medication will be issued based on [a] medical recommendation when appointments are set up."

As post-trial processing continued in his case, on 18 September 2018, Appellant received a copy of the staff judge advocate's recommendation (SJAR) beginning his ten-day window to submit clemency matters. In the clemency submission, Appellant's defense counsel addressed concerns about Appellant's medication while in confinement. Defense counsel wrote to the convening authority: "We also ask that you consider irregularities with [Appellant]'s confinement conditions when determining whether clemency is appropriate. . . . Most significantly, [Appellant] was denied access to prescription anti-depressants for a week." Defense counsel requested the convening authority disapprove the reduction to the grade of E-1 and any remaining forfeitures of pay.

In addition to the defense counsel's letter, Appellant wrote two letters to the convening authority. One letter, dated 25 September 2018, was focused exclusively on his medication. To this letter, Appellant attached both of the grievances he submitted, which contained the responses of SrA SA and TSgt DS. Appellant also explained to the convening authority what happened

while he waited for an appointment. Appellant wrote, "I was suffering bad withdrawals, including racing thoughts, nightmares, inability to sleep, and various others." Appellant indicated he explained the situation to his primary care manager during the appointment. He further wrote,

> [My primary care manager] was appalled by the lack of urgency. She was upset because I had to re-adjust to my medication and start my treatment over. She also confirmed that she would have been more than happy to provide a temporary prescription if she had been asked. She discussed her feelings with the guards on duty and I didn't hear anything more about it.

On 28 September 2018, the SJA signed an addendum to his earlier SJAR. In it, the SJA advised the convening authority he "must consider" the submitted clemency matters. The SJA also wrote, "I reviewed the attached clemency matters submitted by the defense. My earlier recommendation remains unchanged. I recommend that you approve the findings and sentence as adjudged." On 1 October 2018, the convening authority signed a memorandum that he "considered the attached matters before taking action on this case" and then he approved the sentence as adjudged.

## II. DISCUSSION

### A. Post-trial Confinement Conditions

#### 1. Law

We review de novo whether an appellant has been subjected to impermissible conditions of post-trial confinement in violation of the Eighth Amendment[4] or Article 55, UCMJ, 10 U.S.C. § 855. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)).

Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply "the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, except in circumstances where . . . legislative intent to provide greater protections under [Article 55]" is apparent. *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citation omitted). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215

---

[4] U.S. CONST. amend. VIII.

(C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). A violation of the Eighth Amendment is shown by demonstrating:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [appellant]'s health and safety; and (3) that [appellant] "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938 [2000]."

*Id.* (third and fourth alterations in original) (footnotes omitted) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)).

The United States Court of Appeals for the Armed Forces (CAAF) emphasized, "[a] prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *Wise*, 64 M.J. at 469 (citing *White*, 54 M.J. at 472). "This requirement 'promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review].'" *Id.* at 471 (alterations in original) (quoting *Miller*, 46 M.J. at 250). Except under some unusual or egregious circumstance, an appellant must demonstrate he or she has exhausted the prisoner grievance process provided by the confinement facility and has petitioned for relief under Article 138, UCMJ. *White,* 54 M.J. at 472 (citation omitted).

**2. Analysis**

Appellant contends that he is entitled to sentence relief because he was denied access to his prescribed medications, making his conditions cruel and unusual under the Eighth Amendment and Article 55, UCMJ. Alternatively, Appellant argues his post-trial confinement conditions rendered his sentence inappropriately severe under *United States v. Gay*, 75 M.J. 264 (C.A.A.F. 2016).

The Government disagrees with Appellant on three grounds. First, the Government argues that Appellant received his medication once he followed proper prison protocols for obtaining a medication refill. Second, the Government contends that Appellant has not shown the refill procedure constituted a knowing disregard for an excessive risk to Appellant's health. Third, the Government argues Appellant did not show he exhausted his administrative remedies.

To support their arguments, the Government moved to attach a declaration of TSgt DS, the NCOIC of confinement who responded to Appellant's second grievance. We granted the motion to attach over Appellant's objection. TSgt DS's declaration mostly repeats facts contained in the record of trial from

Appellant's clemency submission. There are three areas where he elaborates further. First, TSgt DS stated that Appellant did see a medical provider on 10 September 2018. Second, TSgt DS explained the in-processing procedures at the Vandenberg AFB confinement facility. Third, TSgt DS explained the current protocol "to request medication refills is to fill out a DD Form 510, Prisoner request form, and advise the on duty guard of any medical needs."

In his reply brief, Appellant points out the limited value of TSgt DS's declaration. For example, Appellant notes the declaration fails to state whether Appellant actually received an in-processing handbook that described the "current" medication procedures.

As an initial matter, we must determine whether a post-trial evidentiary hearing is required to resolve a factual dispute. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967) (per curiam). Article 66(c), UCMJ, 10 U.S.C. § 866, does not authorize a Court of Criminal Appeals to decide disputed questions of material fact pertaining to a post-trial claim, solely or in part, on the basis of conflicting affidavits submitted by the parties. *Ginn*, 47 M.J. at 243 (citations omitted). We find a post-trial evidentiary hearing unnecessary. Appellant's claim during the clemency process is factually adequate on its face, and the Government does not contest the relevant facts regarding Appellant's claim about his medication. *See United States v. Fagan*, 59 M.J. 238, 242 (C.A.A.F. 2004) (quoting *Ginn*, 47 M.J. at 248). While Appellant opposed the affidavit of TSgt DS, he does not claim TSgt DS is mistaken as to the date Appellant saw a medical provider—10 September 2018. Therefore, there is no factual dispute on the first area of elaboration in TSgt DS's declaration. Regarding TSgt DS's two remaining elaborations that Appellant disputes, we find they are unnecessary and immaterial for us to consider to resolve this legal issue.

While we offer no endorsement of the manner in which the prisoner grievance system operated in this case, we find Appellant did not exhaust his administrative remedies as he failed to petition for relief under Article 138, UCMJ. Appellant argues, "It is unduly stringent to require an inmate to navigate a rigid, unfamiliar prisoner grievance system, and then pursue a complicated legal avenue to complain directly to a high-ranking commander simply to get the inmate's prescribed medication." We are not persuaded. Appellant successfully navigated the prisoner grievance system and wrote a concise complaint to "all reviewing authorities" during clemency. His next step was to claim he was wronged under Article 138, UCMJ, as a prerequisite to a successful Eighth Amendment or Article 55, UCMJ, claim on appeal. If he had taken this path, even if difficult, it would have allowed development of the factual basis for his complaint, from a medical perspective and a confinement procedures perspective, much closer in time than he invites us to do now during

appellate review of his findings and sentence. As this situation involved a military confinement facility and a military medical facility, we see significant value in the Article 138, UCMJ, complaint process. We find no unusual or egregious circumstances to relieve Appellant of his burden to show he petitioned for relief under Article 138, UCMJ. *See White,* 54 M.J. at 472 (citation omitted).

We also considered whether we should exercise our authority under Article 66(c), UCMJ, to provide "meaningful" sentence relief as Appellant requested. Under Article 66(c), UCMJ, we have broad authority and the mandate to approve only so much of the sentence as we find appropriate in law and fact, and we may therefore grant sentence relief even without finding an Eighth Amendment or Article 55, UCMJ, violation. *United States v. Gay,* 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015)*, aff'd,* 75 M.J. 264 (C.A.A.F. 2016); *see also United States v. Tardif,* 57 M.J. 219, 223 (C.A.A.F. 2002) (a Court of Criminal Appeals has broad authority under Article 66(c), UCMJ, to review and modify sentences). When this court considers judicial relief under Article 66(c), UCMJ, for conditions of post-trial confinement, we have not strictly required an appellant to demonstrate that he has, absent unusual or egregious circumstances, previously exhausted administrative remedies. *See United States v. Kyc,* No. ACM S32391, 2017 CCA LEXIS 376, at *13–14 (A.F. Ct. Crim. App. 30 May 2017) (unpub. op.). We instead consider the entire record and typically give "significant weight" to an appellant's failure to seek administrative relief prior to invoking judicial intervention, while recognizing the limits of our authority. *United States v. Bailey,* No. ACM S32389, 2017 CCA LEXIS 604, at *11 (A.F. Ct. Crim. App. 11 Sep. 2017) (unpub. op.).

After considering the facts and circumstances in the present case, we decline to provide sentence relief under Article 66(c), UCMJ. As this court observed in *United States v. Ferrando,*

> While we have granted sentence relief based upon conditions of post-trial confinement where a legal deficiency existed, we are not a clearing house for post-trial confinement complaints or grievances. Only in very rare circumstances do we anticipate granting sentence relief when there is no violation of the Eighth Amendment or Article 55, UCMJ.

77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted). This case does not present those very rare circumstances.

Appellant claims that his post-trial confinement conditions made his sentence "inappropriately severe." We review issues of sentence appropriateness de novo. *United States v. Lane,* 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole,* 31 M.J. 270, 272 (C.M.A. 1990)). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of

the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (alteration in original) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, that his prescribed antidepressant medication was interrupted for a number of days, and all other matters contained in the record of trial, we conclude that the sentence is not inappropriately severe.

## B. Addendum to the SJAR

### 1. Law

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). The SJA "is not required to examine the record for legal errors." R.C.M. 1106(d)(4). When an allegation of legal error is made in matters submitted under R.C.M. 1105, the SJA "shall state" whether corrective action on the findings or sentence should be taken. *See id.* "The response may consist of a statement of agreement or disagreement with the matter raised by the accused." *Id.*

The CAAF has characterized this section of R.C.M. 1106(d)(4) as a "minimal-response requirement." *United States v. Catrett*, 55 M.J. 400, 408 (C.A.A.F. 2001). In *Catrett*, the CAAF found the "minimal-response requirement" was met when an SJAR addendum simply stated, "Nothing contained in the defense submissions warrants further modification of the opinions and recommendations expressed in the Staff Judge Advocate's Recommendations." *Id.* Our court has found the minimal-response requirement was met when an SJAR addendum stated the SJA "had considered the clemency submission and her original recommendation remained unchanged." *See Kyc*, unpub. op. at *10. Before deciding whether the minimal-response requirement is met, the "threshold question is whether the appellant raised legal error in his clemency submissions." *United States v. Branch*, No. ACM S31691, 2010 CCA LEXIS 403, at *5 (A.F. Ct. Crim. App. 13 Dec. 2010) (unpub. op.) (per curiam).

### 2. Analysis

Appellant correctly notes that Appellant and his defense counsel raised in clemency the conditions of his post-trial confinement and the denial of medication. Next, Appellant argues that "[c]ase law plainly supports that the denial of medication in confinement can constitute a violation of the Eighth Amendment and Article 55, UCMJ." We do not disagree with this point of law, as

under the right circumstances a denial of medication *can* constitute a legal error. That case law could support his position, however, does not mean that Appellant asserted a claim of legal error in his clemency submission. The Government argues Appellant raised no such claim of legal error, and we agree.

Our court has previously observed, "We do not regard a straightforward request for clemency as raising a legal error." *United States v. Burton*, No. ACM S32253, 2016 CCA LEXIS 60, at *10 (A.F. Ct. Crim. App. 1 Feb. 2016) (unpub. op.). Here, defense counsel asked the convening authority to "consider irregularities with [Appellant]'s confinement conditions *when determining whether clemency is appropriate*." (Emphasis added). Defense counsel did not reference the Eighth Amendment, the words "cruel or unusual punishment," Article 55, UCMJ, or even the words "legal error." Instead, defense counsel characterized the situation with Appellant's medication as "irregularities" to be considered by the convening authority in "determining whether clemency is appropriate." We find the defense counsel's letter insufficient to raise a claim of legal error.

We also considered whether Appellant's statement to the convening authority asserted a legal error occurred. Appellant titled the statement at issue, "Lack of Access to Medication in Confinement." We considered the statement with the understanding that Appellant is not a lawyer and may not use the precise language we expect from defense counsel. We find Appellant's statement only provided the factual basis for his defense counsel to assert "irregularities" as a basis for clemency. Appellant did not use any language in his letter that would have shown the SJA he was making a claim of legal error that affected the findings or sentence in his case.

After reviewing the clemency submission as a whole, we find a reasonable SJA would interpret these submissions as a straightforward request for clemency, asserting an irregularity in confinement procedures, not an illegality, as part of the justification for granting the clemency request. We acknowledge our superior court has interpreted clemency memoranda under a "most favorable to appellant's contentions" standard and decided the merits of "any legal error intimated" by the Defense. *United States v. Hill*, 27 M.J. 293, 297 (C.M.A. 1988); *see United States v. Welker*, 44 M.J. 85, 88 (C.A.A.F. 1996) (quoting *Hill*, 27 M.J. at 297). Appellant makes this point in his reply brief and argues the SJA should certainly know when matters submitted amount to legal error, whether they incant the words "legal error" or not. Appellant further argues that he need not pigeonhole his requests into either a request for clemency or an allegation of legal error. Even in a "most favorable" light, we do not see that the Defense intimated a legal error.

Further, even if we assume the Defense intimated a legal error, we find the addendum to the SJAR met the minimal-response requirement as laid out in

*Catrett*, 55 M.J. at 408. Here, the addendum to the SJAR indicated the SJA reviewed the clemency matters submitted and that his earlier recommendation remained unchanged. The addendum then repeated the SJA's earlier recommendation—to approve the findings and sentence as adjudged. We see no discernible difference between the words used by the SJA in this case and the words used in *Kyc*, which we found met the minimal-response requirement. *See Kyc*, unpub. op. at *10. We find the addendum to the SJAR complied with R.C.M. 1106(d)(4) and conclude that new post-trial processing is not required, as there was no error.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[5]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[5] We note three errors in the promulgating order. All three errors arise from a failure to include the convening authority's decision to dismiss with prejudice either certain language in a specification or the entire specification, as required by the PTA. First, in Specification 1 of the Charge, the words "with the intent to distribute the said lysergic acid diethylamide" were dismissed with prejudice at the convening authority's direction. Second, in Specification 3 of the Charge, the words "with the intent to distribute the said marijuana" were similarly dismissed with prejudice. Third, Specification 8 of the Charge was dismissed with prejudice in its entirety at the direction of the convening authority. We direct the publication of a corrected court-martial order to remedy the errors.